HOGUE *v.* ARMSTRONG.

(Division A. Feb. 16, 1931.)

|132 So. 447. No. 29138.|

**Engle & Laub,** of Natchez, for appellant.

**L. T. Kennedy,** of Natchez, for appellee.

**McGowen, J.**, delivered the opinion of the court.

Hogue, appellant, exhibited his bill in the chancery court of Adams county, Mississippi, against appellee, Armstrong, seeking cancellation of a deed on the ground that the deed was executed by appellant to appellee, each to the other, for a one-half interest in three thousand acres of land in Adams county, by mutual mistake. Armstrong, answering the bill, denied the allegations of the bill as to mutual mistake, and filed a cross-bill seeking, among other things, a partition of the land in controversy, which cross-bill did not allege that the lands were incapable of division in kind.

On hearing the proof, the chancellor dismissed the original bill, and sustained the cross-bill to the extent that he ordered a sale of the lands for partition and a division of the proceeds thereof between the parties.

The three thousand acres involved in this controversy is a towhead north of Glascock's Island in the Mississippi river.

The bill of complaint alleged that the deed sought to be canceled was executed a few days after Armstrong had filed a bill against Hogue, alleging that this towhead was in the state of Louisiana, and asserting that title thereto was in Armstrong. The deed executed was a joint deed, wherein Armstrong conveyed a one-half interest in the towhead to Hogue, and Hogue a one-half

interest therein to Armstrong, describing the towhead as being in Mississippi.

It is unnecessary for us to set forth here all the facts of the case.

The gravamen of the bill was that there had been a mistake of fact—a mutual mistake of fact—by the parties at the time of the execution of the deed, which deed was a compromise between the parties, executed by them after Armstrong had filed his bill against Hogue seeking to recover the lands in controversy. After the deed had been executed, Armstrong dismissed his bill, and Kennedy, his lawyer, was invested with a half interest in Armstrong's interest in the land; and very soon thereafter Hogue and Armstrong entered into a contract for Hogue to cut the timber, by which contract and by the cutting of the timber, Hogue paid Armstrong and Kennedy in excess of seven thousand dollars. This also was sought to be recovered in the bill filed by the appellant.

At the time of the settlement it is clear that the issue made by the bill was whether or not the lands were in Louisiana or in Mississippi. The original bill of Armstrong prayed that the court order a survey to establish the line, as permitted by the statute. Armstrong contended that the towhead was not an accretion to, and part of, Briars Plantation, owned by Hogue, abutting the river in Adams county, Mississippi, and that by virtue of certain deeds which he had obtained—set forth in his bill—he was the owner of this particular towhead, and asserted that the lands were in Concordia parish, Louisiana.

The evidence of the complainant, Hogue, as alleged in his bill, tends to show that the lands were in Mississippi. However, we express no opinion as to the result of the evidence on this line, deeming it unnecessary. The evidence further shows that in eight or ten days after

Armstrong filed his bill, Hogue sought a compromise and advised Kennedy, the attorney for Armstrong, to that effect. Armstrong was a nonresident of this state, and upon being informed of the offer of compromise, came to Mississippi, and in the office of Kennedy, his attorney, executed the deed sought to be canceled. There were present at the conference Armstrong, attended by his attorney, Kennedy, and Hogue, accompanied by his attorneys, Judge DALE of Louisiana, and Judge MARTIN of Mississippi.

There is not a scintilla of evidence in this record that Hogue was not fully informed both as to the law and the facts. It is true that Hogue testified that Kennedy deceived him, but he points to no statement of Kennedy's that sustained any false statement of fact beyond the bare allegation of Armstrong's bill that the towhead was either an accretion to Glascock's Island, in Concordia parish, Louisiana, or it was a part of the island which had been submerged by the waters of the river and which had reappeared. On the other hand, Hogue contended that the lands were accretions to Briars Plantation, owned by him, and were in Mississippi.

When the parties made the compromise settlement, the real question of fact to be ascertained was the true boundary line between the state of Mississippi and Louisiana, the Mississippi river flowing between the states.

Hogue does not point to a single statement of fact made by Kennedy, save the bare contention which had been fully amplified in his client's bill of complaint against Hogue. Armstrong was a nonresident of Mississippi; Hogue was a resident, owning land abutting the river, and was in full possession of the facts or had facilities for ascertaining the facts, whatever they were, as to whether the lands were in Mississippi or Louisiana.

In this state of the case, they mutually agreed by their deed that the lands were in Mississippi, Armstrong making that concession to Hogue and dismissing his bill against him. There is nothing in the record to show any kind of mutual mistake, and in the pending litigation with the vexatious question of the boundary line between two states confronting him, Hogue may have thought that it was to his advantage to settle the case. It is certain that he was not overreached in any particular insofar as anything in this record disclosed. He was accompanied by two lawyers, one acquainted with the Mississippi law, and the other with the Louisiana law, and had every opportunity to know as much about the case as Armstrong or his attorney knew; and there is no statement in the record that Hogue was not advised by his attorneys fully as to his rights in the premises, and as to his interest in the land, at least, there being nothing to the contrary, we so assume. The parties were dealing at arm's length when they made the compromise settlement. They are bound by it since there was no fraud, duress, coercion, or mutual mistake. There might have been a lack of judgment on the part of Hogue; it may be that he ought not to have settled the lawsuit. With that we are not concerned, there being no evidence of fraud, coercion, misrepresentation, or mistake. The parties are bound by their compromise settlement, and the chancellor was correct in dismissing the bill.

Hogue's compromise settlement may have been a mistake of judgment on this part, but while equity will relieve from fraud or mistake, the one or the other must clearly appear from the evidence. As to the facts, Hogue was in a better situation to know or ascertain them, and as to his legal rights, he had his lawyers at his side and no effort is made to show that they did not fully and correctly advise him.

What we have said above disposes of the cases of Hoy v. Hoy, 93 Miss. 732, 48 So. 903, 25 L. R. A. (N. S.) 182, 136 Am. St. Rep. 548, 17 Ann. Cas. 1137; Alabama & V. R. Co. v. Jones, 73 Miss. 110, 19 So. 105, 55 Am. St. Rep. 488; Nabours v. Cocke, 24 Miss. 44, and Newell v. Fisher, 11 Smedes & M. 431, 49 Am. Dec. 66. In the latter case, the defendant, while intoxicated, executed a note to the plaintiff when he was not indebted to him, and upon the defendant's becoming sober, he promised to pay it, but the court held that this was a promise to pay without consideration.

It will be observed that these facts are not applicable to the case at bar. By the compromise settlement Hogue secured the dismissal of the suit, and the acknowledgment by Armstrong that the lands were in Mississippi. No kind of fraud was practiced upon him, nor were any false representations made to him by the party with whom he was dealing at arm's length—his adversary in the lawsuit. Hence, we think the chancellor was correct in denying complainant any relief, for there was neither mistake nor fraud involved.

However, the action of the court below in ordering the sale of the lands must be reversed and remanded, because the court ordered a sale of these lands without hearing any proof. The burden was on the cross-complainant, Armstrong, to show that the lands were not susceptible of partition in kind, and there is no proof in this record authorizing a sale of this three thousand acres of land under the statute controlling the sales of land for partition. Hemingway's Code 1927, section 3038. The petition neither alleged, nor did the proof show, the existence of any of the statutory requisites authorizing the court to order a sale in the first instance. On the question of whether the lands should be sold or partitioned in kind between the owners, this case is reversed and remanded. See Cox v. Kyle, 75 Miss. 667, 23 So. 518; Smith v.

Stansel, 93 Miss. 69, 46 So. 538;, Shorter v. Lesser, 98 Miss. 706, 54 So. 155; Hilbun v. Hilbun, 134 Miss. 235, 98 So. 593. It is no answer to this proposition that the court below did not give it consideration. The decree is erroneous in this respect; the court should have given it consideration, and sale will not be ordered unless and until petition and proof authorize the sale, as provided by the statute.

Affirmed in part; reversed and remanded as to partition.